STEPHENSON, GUNTER, Associate Judge.
Appellant, as plaintiff below, filed an action for partition and sale of certain realty that she and defendant had acquired and occupied as man and wife as their home. The defendant at the time said title was acquired and until after the complaint was filed had a living undivorced spouse. Plaintiff contends for a tenancy in common in said real estate by way of contribution, or, in the alternative, by gift.
The defendant admits the execution and delivery of the deed conveying the property to the defendant and to the plaintiff as his wife. He denies gift to or any contribution by plaintiff.
Defendant counterclaimed, alleging a failure of consideration from plaintiff in that the title was placed in both names because plaintiff by her false promises and representations intentionally led the defendant to believe that the plaintiff and defendant would be married at some date in the near future when both parties would be free to remarry. Defendant further alleges that the plaintiff made such false representations for the purpose of inducing the defendant to place plaintiff’s name upon the deed in question.
It was stipulated that the property was purchased entirely through the defendant’s G. I. mortgage, which mortgage was signed by the appellant and the appellee, and that the Mrs. T. Luster Wilhelm recited in the deed as the wife of the defendant is actually T. Luster Allen, the plaintiff herein. It was agreed that the parties were never married to each other and that the defendant had a living undivorced spouse at the time of the aforesaid conveyance.
The defendant contends that plaintiff’s conduct in leaving him has rendered their future marriage impossible and that he should have sole title to the property. The chancellor who heard the testimony entered a final decree dismissing plaintiff’s complaint and granted defendant’s counterclaim, entering judgment vesting sole title to the property in defendant, free and clear of any claim of plaintiff.
 We are confronted with the question of whether there was substantial competent evidence to support the chancellor’s findings of fact. An appellate court will not reverse a chancellor on his findings of fact based on the evidence produced before him where there is substantial competent evidence in support of the chancellor’s determination. We are unable to find such evidence in the record to support the chancellor’s final decree and the cause must be reversed. Mercer v. Mercer, Fla.1949, 41 So.2d 318, Florida Nat. Bank & Trust Co. of Miami v. Brown, Fla.1949, 47 So.2d 748, and Talbot v. Talbot, Fla.App. 1958, 104 So.2d 410.
In fact, appellee in his brief concedes that the chancellor was in error in finding that both parties had a living undivorced spouse, but appellee contends this error was harmless.
The chancellor found that the plaintiff contributed nothing towards the purchase price of the property. It is admitted throughout the record that no cash consideration was paid by either of the parties and that the deed was delivered in consideration of plaintiff and defendant executing a mortgage in the approximate amount of $12,050. Further, there is no> denial of the plaintiff’s testimony (Tr. 40-42, inc.) that she received an allotment check for around $50 a month; that she received $85 per month rent for her house in Hialeah; that she worked periodically as a waitress for $25 per week and borrowed money on her insurance, and that all of these funds were deposited along with the defendant’s income in a joint bank account, and that she paid house bills, including mortgage payments, out of this account.
It also appears that she wrote all the checks on this account which was at the *859 request of this defendant (Tr. 58). Nor is it denied that the plaintiff and her mother co-signed the note which was secured and which raised the money to pay the 1955 taxes' on the property involved.
It is not denied that plaintiff was eligible to contract marriage from September 1953, yet the defendant, according to his own testimony, was not divorced until January of 1958, which was a month after the complaint was filed in this cause.
Plaintiff claims that she left the defendant in April, 1956, because the defendant, “Mr. Wilhelm, couldn’t quit drinking. I didn’t mind the drinking so much, but he wouldn’t leave me alone * *
The testimony most favorable to the ap-pellee, or defendant below, is found in Transcript of Record, pages 80 through 86. When the defendant was asked to explain in his own words briefly how he came to purchase the property and place both names on the deed, his answer in effect was: “Well, we was figuring on getting together and I figured well, why not buy a house. I got a daughter, I had trouble up north, and I wanted a place for her, at least, and have something to give her. Well, we just went and bought a house and when she grows up some day she’ll have it. That’s what I figured.”
When the said defendant was asked what specific promises the plaintiff had made to him before the purchase of the house, he replied: “Well, we’d get married whenever everything got squared away and make a home for the kids.” The defendant admitted that he had been living with plaintiff in her home in Hialeah and with her in the home of plaintiff’s aunt in Fort Lauder-dale prior to the time they purchased the involved property. As to his allegations that plaintiff made no contributions, he at no place denied plaintiff’s testimony about her income above set forth or the joint bank account held by them, and when he was asked, “To your knowledge did the plaintiff ever contribute any money of her own in making mortgage payments or expenses on the house end of it?” his answer was, “No, sir, it wasn’t necessary.”
He was asked did he have any agreement with the appellant as to her making any mortgage payments, and he replied, “No, sir, I didn’t figure her as a maid and I didn’t question where the money went. Of course, I used to wonder at times.”
When the defendant was asked had he requested the plaintiff to deed back the house, he replied “Yes, I did and I sez, ‘why not sign it over to me. You have got two houses and I’m thinking about my kid.’ I sez ‘Otherwise you could have the house.’ ”
 It is clear from the above there is a complete lack of evidence to substantiate defendant’s counterclaim of fraud and the counterclaim should have been dismissed. Further, the record does not show a refutation of plaintiff’s claim of contribution and a decree of partition and sale should have been granted.
It is, therefore, directed that this cause be reversed for further proceedings consistent with the views hereinabove expressed.
Reversed.
KANNER, Acting C. J., and SHANNON, J., concur.