157 So.2d 696 (1963)
HOWARD M. DUNCANSON AND MATTIE LEWIS WILSON, APPELLANTS,
v.
SERVICE FIRST, INC., A FLORIDA CORPORATION, D/B/A SERVICE FIRST INSURANCE AGENCY, AND AMERICAN SECURITY INSURANCE COMPANY, APPELLEES.
No. 63-176.
District Court of Appeal of Florida, Third District.
November 19, 1963.
Rehearing Denied December 10, 1963.
*697 Howard M. Duncanson, Hollywood, Henry H. Arrington, Herbert M. Klien, Miami, for appellants.
Blackwell, Walker & Gray and James E. Tribble, Miami, for Service First, Inc.
Dean, Adams, & Fischer and Robert M. Sturrup, Miami, for American Security Ins. Co.
Before CARROLL, TILLMAN PEARSON and HENDRY, JJ.
HENDRY, Judge.
Appellee, Service First, Inc., an insurance agency, brought this action seeking a declaration of its rights and obligations as against the appellants. The appellant, Wilson, had made demand upon Service First to defend her in a personal injury suit instituted against her by appellant, Duncanson, resulting from an automobile collision. Wilson's demand was based on an alleged breach of contract to provide automobile liability insurance coverage. Duncanson claimed to be a third party beneficiary of any insurance coverage which Wilson had. Appellee, American Security Ins. Co., was alleged to be the insurance carrier and was added as a party defendant.
The appellants seek review of a final declaratory decree declaring that Wilson had no liability insurance coverage at the time of her automobile accident and the appellees owed no duty to appellants with regard to the accident in question.
*698 The following facts are undisputed: (1) From November 24, 1959 to November 24, 1960, appellant, Wilson, was insured under an automobile liability policy issued by appellee, Service First, an insurance agency, with appellee, American Security; (2) The authority of Service First to write or renew automobile liability insurance with American Security ceased on January 1, 1960; (3) Shortly before the expiration of the policy, Service First advised Wilson that her policy would expire on November 24, 1960, that her credit was good and she could have "up to six monthly payments to pay for your new policy"; (4) On November 24, 1960 Service First wrote Wilson that her policy had expired and she could call them to find out the "cost to re-write your policy"; (5) On November 29, 1960 Wilson went to the office of Service First and gave them $5.00 for which she was given a receipt marked "partial down payment on renewal"; (6) On January 4, 1961, Wilson was involved in an automobile accident with Duncanson; (7) At the time of the accident no policy had been formally written by Service First covering Wilson; (8) Wilson made additional payments after January 4, 1961 and was issued a policy thereafter in another insurance company.
On final hearing three people testified: Mr. Erwin R. Waite, President of Service First; Mr. John Edward Doig, the General Agent for American Surety; and Wilson. The employee of Service First who spoke to Wilson on November 29, 1960 and gave her the receipt for her $5.00 did not testify.
Mr. Waite confirmed the above mentioned facts and acknowledged that his insurance agency financed most of the policies they wrote, accepting small down payments. Mr. Waite stated that he never spoke with Wilson and that one of the employees in his office wrote the $5.00 receipt. Mr. Waite admitted that neither he personally, nor any of his company's letters, advised Wilson that her policy was not going to be renewed in the same company. He further stated that the previous policy was written before the full down payment was received.
Appellant, Wilson, testified that on November 29, 1960 she took her car out of the repair shop, where it had been for about a month, and went to Service First to renew her policy. She stated that she spoke to a lady seated behind a desk and told her that she wanted to renew her policy but only had $5.00; the lady said, "she would accept the $5.00 on my renewal and I could go ahead". Wilson went on to say, "She accepted the $5.00 on my renewal and told me I could go ahead on to work and not to worry". Wilson was never told how long she had to pay the balance.
Mr. Doig testified Service First had no authority to write or renew liability policies with American Security after January 1, 1960.
Giving the final declaratory decree the presumption of correctness to which it is entitled, we nevertheless hold that the findings of the chancellor with respect to the liability of appellee, Service First, to Wilson are against the manifest weight of the evidence and that portion of his decree must be reversed.[1]
Service First never denied that the person who accepted Wilson's $5.00 and issued her a receipt was its agent and had authority to act on its behalf. The receipt was for "partial payment on renewal". It was the established policy of Service First to extend credit to those who purchased insurance through it and it had previously written Wilson stating that her credit was good and she could have "up to six monthly payments to pay for your policy". Her previous policy had been written upon receipt of a partial down *699 payment. Upon the payment of $5.00 and the employee's assurance of coverage, Wilson had every reason to expect that her coverage would commence immediately.[2] There was no testimony that she had been advised to the contrary.
The fact that there was no agreement reached as to the amount of the premium and when future payments were to be made, does not preclude recovery. Nor does the fact that no specific insurance company was designated relieve the broker of liability. It is well settled that in an action against an insurance agent or broker for breach of contract to procure insurance, the elements of a contract, including the amount of the premium, can be found by implication from previous dealings between the parties.[3] It has further been specifically held that payment of premium is not necessary to the validity of a contract to procure insurance[4] and that an agreement to accept a policy if issued is sufficient consideration since it carries with it the implied promise to pay whatever premium would be due thereon. First National Ins. Agency v. Leesburg Transfer and Storage, Inc., Fla. App. 1962, 139 So.2d 476.
We are duty bound not to disturb the findings of fact of a trial judge in a case heard without a jury where such findings are based upon conflicting competent evidence.[5] However, where the testimony on the pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these statements of fact can not be wholly disregarded or arbitrarily rejected. Rather, the testimony should be accepted as proof of the issue for which it is tendered, even though given by an interested party, so long as it consists of fact, as distinguished from opinion, and is not essentially illegal, inherently improbable or unreasonable, contrary to natural laws, opposed to common knowledge, or contradictory within itself.[6]
The application of the previously cited law to the particular facts involved herein compels us to reverse the chancellor and to hold that Service First breached its contract to procure automobile liability insurance coverage and accordingly must respond in damages to the extent of the loss which would have been recoverable under the terms of the prior policy. Service First shall also be required to pay a reasonable attorney's fee for the defense of the suit instituted by Duncanson against Wilson, together with the costs assessed against Wilson in that action.
The remaining portion of the final declaratory decree is affirmed. Service First was not the agent or broker of American Security at the time the contract to procure insurance was entered into and it had no actual or apparent authority to bind American Security. Duncanson, while a party to this action, has no rights against Service First which can be adjudicated in this action.
The cause is remanded for the entry of a final decree consistent with this opinion.
Affirmed in part, reversed in part and remanded.
NOTES
[1] See Allen v. Wilhelm, Fla.App. 1959, 113 So.2d 857; Talbot v. Talbot, Fla. App. 1958, 104 So.2d 410; Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35.
[2] See Lawrence v. Francis, 223 Ark. 584, 267 S.W.2d 306 (1954); Derby v. Blankenship, 217 Ark. 272, 230 S.W.2d 481 (1950); Gardner v. Hermann, 116 Minn. 161, 133 N.W. 558 (1911); White v. Calley, 67 N.M. 343, 355 P.2d 280 (1960); Aresto v. Nat'l-Ben Franklin Fire Ins. Co., 184 Pa.Super. 114, 133 A.2d 304 (1957).
[3] See Hamacher v. Tumy, 222 Or. 341, 352 P.2d 493 (1960) and the authorities cited therein.
[4] See Rezac v. Zima, 96 Kan. 752, 153 P. 500 (1915); Russell v. O'Connor, 120 Minn. 66, 139 N.W. 148 (1912); Hamacher v. Tumy, supra.
[5] See Bittner v. Walsh, Fla.App. 1961, 132 So.2d 799.
[6] See Vilas v. Vilas, 153 Fla. 102, 13 So.2d 807; Flowers v. State, 106 Fla. 686, 143 So. 612; Montgomery v. State, 55 Fla. 97, 45 So. 879; Levy v. Cox, 22 Fla. 546 (1886); Harris v. State, Fla. App. 1958, 104 So.2d 739.